O

**NO JS-6**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT COHEN, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>   v.<br><br>FOOTHILL/EASTERN TRANSPORTATION CORRIDOR AGENCY; SAN JOAQUIN HILLS TRANSPORTATION AGENCY; 3M COMPANY; BRIC-TPS LLC,<br><br>                Defendants. | Case No. SACV 15-01698 DDP (DFMx)<br><br>**ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS OR STAY**<br><br>[Dkt. No. 29] |

    Presently before the Court is Defendants' Motion to Dismiss or, Alternatively, to Stay Action Pending Resolution of Spokeo by U.S. Supreme Court.  (Dkt. No. 29.)  Based on the parties' submissions and after hearing oral argument, the Court adopts the following Order.

**I.    BACKGROUND**

    This putative class action case arises based on an alleged violation of the Fair Credit Reporting Act ("FCRA") as modified by the Fair and Accurate Credit Transaction Act ("FACTA"), 15 U.S.C. § 1681 et seq.  (Compl., dkt. no. 1.)  These statutes are designed to

prevent identity theft and fraud on consumers. (Id. ¶ 23.) FACTA's amendments passed on December 4, 2003, and came into force on December 4, 2006. (Id.) At issue here is 15 U.S.C. § 1681c(g)(1), which requires truncation of credit and debit card numbers on receipts provided to cardholders at the point of sale or transaction. (See Compl. ¶ 24.) No more than the last five digits of the card number can be printed, and the receipts may not include the card's expiry date. (See id.) Plaintiff cites 15 U.S.C. § 1681n(a) for supporting his allegation that statutory damages, punitive damages, and attorneys' fees and costs are available to consumers who prove a willful violation of FACTA's requirements.

Defendants here are operators of toll roads in Orange County, California. (Compl. ¶¶ 1-2.) Defendants Foothill/Eastern Transportation Corridor Agency and San Joaquin Hills Transportation Corridor Agency are governmental entities created by communities in Orange County to operate toll roads in that area (collectively, they are referred to as the Transportation Corridor Agencies, or "TCAs"). (Id. ¶¶ 1-2, 19.) Defendants 3M Company and BriC-TPS LLC are, Plaintiff alleges, independent contractors of the TCAs who perform administrative functions. (Id.)

Plaintiff claims that the TCAs created and operate "the largest network of toll roads in the state of California," covering fifty-one miles of roadway "used by an estimated 250,000 drivers every day." (Id. ¶¶ 6, 36-37.) Defendant 3M was the original contractor that administered the toll roads — including payment processing — but Plaintiff alleges that 3M's contract expired on June 30, 2015. (Id. ¶¶ 7, 20, 38-39, 41.) Plaintiff claims that an amendment to the license agreement allows the TCAs to continue

using 3M's software to administer the toll roads. (Id.) Plaintiff alleges that Defendant BRiC-TPS serves as interim contractor now and was a subcontractor of 3M in operating the toll systems. (Id. ¶¶ 8, 21, 39-40.) Defendants operate the toll roads using an electronic tolling system that is a no-cash system since May 2014; prior to that, Plaintiff claims that "drivers predominately paid with their credit or debit cards." (Id. ¶¶ 9, 44.) Convenience fees are charged at authorized merchants who can process toll payments with cash, such fees potentially being higher than the toll charged. (Id. ¶ 45.)

Plaintiff alleges that on August 11, 2015, he drove on toll roads administered by Defendants and incurred a toll of $1.94. (Id. ¶ 48-49.) Plaintiff paid the toll at a "Toll Roads Service Center" with his debit card because no cash payment was allowed at the Service Center. (Id.) Plaintiff claims that he "received an electronically printed receipt from The Toll Roads that detailed his payment and included the first four and the last four digits of his Visa debit card." (Id. ¶ 50 (citing Ex. F (redacted receipt)) (emphasis omitted).) On August 25, 2015, Plaintiff claims he sent a letter to some of the Defendants "notifying them of their violation of FACTA in providing his electronically printed receipt for his toll payment, as identified by The Toll Roads on August 11, 2015, by disclosing more than the last five digits of his debit card number." (Id. ¶ 51.) Plaintiff alleges that Defendants never responded to the letter. (Id.)

Plaintiff claims that Defendants were on notice of FACTA's requirements to truncate all but the last five digits of credit and debit card numbers on electronically printed receipts. (Id. ¶ 52.)

Plaintiff alleges the violations were done "willfully, knowingly, or recklessly" and that Defendants "knew, should have known, and/or were reckless in not knowing about the requirement to truncate customers' credit and debit card numbers." (Id. ¶ 69-70.) According to Plaintiff, "[b]ecause Defendants violated FACTA by disclosing more than the last five digits of Plaintiff's debit card number, Plaintiff is subject to an increased risk of identity theft and fraud." (Id. ¶¶ 53, 72.) This is the source of Plaintiff's damages. (Id. ¶¶ 54, 73.)

## II. LEGAL STANDARDS

### A. Motion to Dismiss

A 12(b)(6) motion to dismiss requires a court to determine the sufficiency of the plaintiff's complaint and whether it contains a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a court must (1) construe the complaint in the light most favorable to the plaintiff, and (2) accept all well-pleaded factual allegations as true, as well as all reasonable inferences to be drawn from them. See Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001); Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998).

In order to survive a 12(b)(6) motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). However, "[t]hreadbare recitals of the elements of a cause of action,

4

supported by mere conclusory statements, do not suffice." Id. at 678. Dismissal is proper if the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008); see also Twombly, 550 U.S. at 561-63 (dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief).

A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The Court need not accept as true "legal conclusions merely because they are cast in the form of factual allegations." Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003).

On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the party asserting jurisdiction bears the burden of proof that jurisdiction exists. Sopak v. Northern Mountain Helicopter Serv., 52 F.3d 817, 818 (9th Cir. 1995). A motion under Rule 12(b)(1) may challenge the court's jurisdiction facially, based on the legal sufficiency of the claim, or factually, based on the legal sufficiency of the jurisdictional facts. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000)(citing 2 James Wm. Moore et al., Moore's Federal Practice 12.30[4], at 12-38 to 12-41 (3d ed.1999)). Where the motion attacks the complaint on its face, the court considers the complaint's

allegations to be true, and draws all reasonable inferences in the plaintiff's favor. Doe v. Holy See, 557 F.3d 1066, 1073 (9th Cir. 2009). Article III standing is a matter of subject matter jurisdiction that is the burden of the party invoking federal jurisdiction to establish. DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 441-42 (2006).

### B. Motion to Stay

"A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." Leyva v. Certified Grocers of Cal., Inc., 593 F.2d 857, 863 (9th Cir. 1979); see also Landis v. North American Co., 299 U.S. 248, 254-255 (1936).

Where a stay may prejudice the opposing party, the party seeking a stay must show that the denial of a stay will result in some hardship. Landis, 299 U.S. at 255. The court must weigh competing interests, including "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962).

///

**III. ANALYSIS**

Defendants raise three main arguments in support of their motion to dismiss or stay: (1) Plaintiff lacks Article III standing to sue; (2) the complaint does not sufficiently plead a willful violation of FACTA; and (3) the Court should stay the case because the Supreme Court is reviewing the question of statutory standing from another FCRA case in Spokeo, Inc. v. Robins, No. 13-1339. (Mot. Dismiss at 1-2.) Plaintiff responds that he did allege actual injury as well as a statutory violation in order to satisfy the standing requirement. (Opp'n at 3-5.) Further, Plaintiff argues the complaint does allege facts supporting Plaintiff's claim that Defendants' violation of FACTA was willful. (Id. at 1-3.) Lastly, Plaintiff argues the Court should not grant the stay because it is speculative whether Spokeo will impact this case and a stay would be prejudicial. (Id. 5, 20-24.)

  **A. Willful Violation of FACTA**

As an initial matter, the Court finds that the complaint does plead sufficient facts to support Plaintiff's claim that Defendants willfully violated FACTA. The federal courts have a liberal pleading standard and at the motion to dismiss stage, all well-pled facts must be construed in Plaintiff's favor. See, e.g., Fontana v. Haskin, 262 F.3d 871, 876-77 (9th Cir. 2001). The complaint alleges what FACTA requires, the publicity that the FACTA requirements received, the credit card company requirements that are consistent with FACTA, and the three-year ramp up to the compliance time period — which for Defendants, Plaintiff claims, began more than a decade ago with California state law requiring credit and debit card number truncation. (See Opp'n at 13-15.)

7

The complaint also specifically alleges a knowing or reckless violation of the statute. Altogether, the facts pled are sufficient to state a claim.

**B. Standing and Stay**

Standing is a constitutional limit on the power of federal courts to hear cases that is derived from Article III's case or controversy requirement. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). As the Supreme Court elucidated in Lujan and other cases, there are three elements to the constitutional requirement:

> First, the plaintiff must have suffered an "injury in fact" — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of — the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Id. at 560-61 (alterations in original) (footnote and citations omitted). At issue here is the "injury in fact" requirement.

Defendants argue that there is no actual injury here because Plaintiff is only alleging that Defendants violated a statute. (Mot. Dismiss at 2-5.) Further, Defendants argue that at most, Plaintiff claims "in a conclusory manner that he has been exposed to a hypothetical increased risk of identity theft and fraud." (Id. at 5.) Such hypothetical future injury is not sufficient for Article III standing, Defendants claim, particularly after the Supreme Court's decision in Clapper v. Amnesty International, U.S.A., 133 S. Ct. 1138 (2013). (Mot. Dismiss at 5-7.) Additionally, Defendants explain that the Ninth Circuit has

required "at least a credible threat of harm that is real and immediate," such as when a laptop full of employees' sensitive, unencrypted information was stolen in Krottner v. Starbucks, Corp., 628 F.3d 1139 (9th Cir. 2010). This real, credible threat of harm is missing in this case, according to Defendants.

Plaintiff responds that not only are Defendants asking this Court to prematurely decide in favor of the position argued by the petitioner in Spokeo currently before the Supreme Court, but also Defendants ask this Court to ignore the still-binding law of the Ninth Circuit's decision in Spokeo. (Opp'n at 5-7.) Plaintiff also argues that he has suffered a real injury, cognizable because of the statute, and that Plaintiff is among those injured by Defendants' statutory violation. (Id. at 7-9.) Plaintiff claims that Defendants gave him a receipt with more card numbers on the receipt than the statute allows, thus mishandling his personal financial information and subjecting him to an increased risk of identity theft. (Id. 9-11.) According to Plaintiff, this is a real, actual injury, not just a hypothetical future harm. (Id.)

The question of standing in this case is strongly intertwined with Defendants' arguments regarding a stay. As Defendants admit, the Ninth Circuit's holding in Spokeo could be understood to say that a violation of a statutory right can be sufficient to satisfy the injury in fact requirement of Article III standing. See Robins v. Spokeo, Inc., 742 F.3d 409, 413-14 (9th Cir. 2014), cert. granted, 135 S. Ct. 1892 (2015). The Ninth Circuit noted that Congress can "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law" — so-called statutory standing. Id. at 413

9

(quoting Lujan at 504 U.S. at 578); see also Fed. Election Comm'n v. Akins, 524 U.S. 11, 21 (1998); Bennett v. Spear, 520 U.S. 154 (1997); Warth v. Seldin, 422 U.S. 490, 514 (1975); Trafficante v. Metro. Life Ins. Co., 409 U.S. 205 (1972).

The plaintiff in Spokeo is Thomas Robins, suing on behalf of himself and a putative class. Spokeo, 742 F.3d at 410. The defendant is Spokeo, Inc., an operator of a website that allows users to search for individuals by name, email, phone number, or address and find publically-sourced information about individuals associated with the input. Id. This information includes contact information, occupation, marital status, relatives, economic health, education attained, wealth, and other similar information. Id. Robins sued Spokeo because he asserted that Spokeo's website listed false information about him, which prevented him from getting a job and caused him psychic injuries such as anxiety and stress. Id. at 410-11. Robins alleged that Spokeo was willfully violating the FCRA by providing this false information about him. Id.

The Ninth Circuit saw the question before it as "whether violations of statutory rights created by the FCRA are 'concrete, *de facto* injuries' that Congress can so elevate" as to create statutory standing, and the Ninth Circuit found that violations of the FCRA are sufficient for statutory standing. Id. at 413-14. The court undertook a two-step analysis: first, "a plaintiff must be among the injured in the sense that she alleges the defendants violated *her* statutory rights" and second, "the statutory right at issue must protect against individual rather than collective harm." Id. (quoting Beaudry v. TeleCheck Servs., Inc., 579 F.3d 702, 707

10

(6th Cir. 2009) (internal quotations omitted)).  The Ninth Circuit found the plaintiff in Spokeo was alleging his own statutory rights were violated and that his "personal interests in the handling of his credit information are individualized rather than collective" harms.  Id.  Thus, one way of understanding the Ninth Circuit's decision in Spokeo is that the court held the plaintiff had statutory standing based on his statutory rights being violated. Another way of understanding the case, however, is that the plaintiff had alleged that he suffered actual, individual harm because he was unable to get a job based on the false information Spokeo posted about him.

Here, Plaintiff alleges that Defendants violated his statutory rights by providing him with an electronically printed receipt that contained more than the last five digits of his card number in violation of 15 U.S.C. § 1681c(g)(1).  The statute provides for a private right of action in such cases in order to protect against individual identity theft and fraud.  The private right of action provides for either actual damages or statutory damages ranging from $100 to $1000 per willful violation.  15 U.S.C. § 1681n. Here, Plaintiff is also alleging that he was personally injured by Defendants' actions because he is now at greater risk for identity theft and fraud, although Plaintiff does not allege his identity was stolen.  Thus, Plaintiff has two potential standing arguments — a purely statutory one, and one where Plaintiff appears, like the plaintiff in Spokeo, to attempt to plead that he was actually damaged by Defendants' willful violation of the statutory requirements.

11

However, these are the exact standing questions the Supreme Court is analyzing in its review of the Ninth Circuit's decision in <u>Spokeo</u>. Thus, Defendants seek a stay in this action pending the Supreme Court's resolution of the standing issue in <u>Spokeo</u>. The case has been fully briefed and was argued on November 2, 2015. The Supreme Court is likely to make a decision sometime between now and June 2016. These facts push in favor of a stay.

Defendants also argue that allowing the case to go forward would cause them significant prejudice because the Court may lack subject matter jurisdiction due to the lack of standing, but Defendants would have been subjected to classwide discovery and class action certification preparation. (Mot. Dismiss at 13-14; Reply at 5-6.)

Plaintiff argues he would be prejudiced by a stay and that <u>Spokeo</u> would not control the outcome of the standing analysis here. (Opp'n at 20-24.) Further, Plaintiff claims that enforcement of FACTA must continue while the Supreme Court analyzes these standing issues. (<u>Id.</u>)

The Court finds that the prejudice to Plaintiff would be slight if a stay is granted. It is still early in the case, and with class certification and other important litigation steps still ahead, a stay now to see if the Supreme Court forecloses Plaintiff's main theory of standing would be beneficial to efficient and proper judicial functioning. Therefore, the case is stayed pending the Supreme Court's decision in <u>Spokeo</u>.

**IV. CONCLUSION**

For all the reasons listed above, the Court GRANTS in part Defendants' Motion to Dismiss or Stay, and STAYS the action pending

12

resolution of the Spokeo case at the Supreme Court.  The Court orders the parties to file a status report within ten days of the Supreme Court issuing a decision in Spokeo updating the Court on the litigation and the impact of the Spokeo decision on this case, if any.

IT IS SO ORDERED.

Dated: February 8, 2016

                                             DEAN D. PREGERSON
                                             United States District Judge